UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| In re: | Case No. 1:13-cv-00408-BLW |
| JOSEPH STANLEY VISSER and APRIL McGOVERN VISSER, | **MEMORANDUM DECISION** |
| Debtors. | |
| _____ | |
| TWIN FALLS STAFFING, LLC, | |
| Plaintiff/Appellee, | |
| v. | |
| JOSEPH STANLEY VISSER and APRIL McGOVERN VISSER, | |
| Defendants/Appellants. | |

**INTRODUCTION**

Debtors appeal the bankruptcy court's judgment and order denying their motion to

alter or amend the judgment.  For the reasons expressed below, this Court will affirm in

part and reverse in part.

**MEMORANDUM DECISION - 1**

## BACKGROUND

Debtor Joe Visser is a former employee of Twin Falls Staffing, LLC. He left

Twin Falls in 2009 to set up a competing business. Twin Falls sued Visser in state court,

claiming that he was violating a non-competition clause in his employment agreement.

In April 2010, the state court granted a preliminary injunction, prohibiting Visser from

competing with Twin Falls for a one-year period. The state court also scheduled trial to

begin on July 19, 2011, but Visser filed a Chapter 7 bankruptcy petition before then.

Twin Falls commenced an adversary proceeding against Visser, contending that

Visser's debt to Twin Falls was nondischargeable under 11 U.S.C. § 523(a)(6). After a

bench trial, the bankruptcy court agreed, concluding that Visser had wilfully and

maliciously injured Twin Falls, causing the company to suffer $361,901.55 in damages.

Visser appeals the bankruptcy court's judgment. He says the bankruptcy court "erred

both as to law and fact" in deciding he had maliciously injured Twin Fall and in deciding

the amount of damages. *Opening Br.*, Dkt. 6, at 1. Visser also contends that the

bankruptcy court erred when it denied his motion to alter or amend the judgment.

## STANDARD OF REVIEW

District courts review bankruptcy court decisions in the same manner as would the

Ninth Circuit. *See In re George*, 177 F.3d 885, 887 (9th Cir. 1999). "Whether a claim is

nondischargeable presents a mixed question of fact and law and is reviewed de novo."

*Carillo v. Su (In re Su),* 290 F.3d 1140, 1142 (9th Cir. 2002). Nevertheless, the

bankruptcy court's factual findings underlying the nondischargeability determination are

reviewed for clear error. *See id.*; *Banks v. Gill Distrib. Ctrs., Inc. (In re Banks)*, 263 F.3d

MEMORANDUM DECISION - 2

862, 869 (9th Cir. 2001) ("Whether an actor behaved wilfully and maliciously is

ultimately a question of fact reserved for the trier of fact."); *Murray v. Bammer (In re*

*Bammer)*, 131 F.3d 788, 791 (9th Cir. 1997).  The bankruptcy court's denial of Visser's

motion to alter or amend the judgment is reviewed for an abuse of discretion.  *See State*

*of Idaho Potato Comm'n v. G&T Terminal Pkg., Inc.*, 425 F.3d 708, 719 (9th Cir. 2005).

## ANALYSIS

**1.     The Bankruptcy Court Did Not Err in Concluding that Visser's Debt to Twin
       Falls Staffing is Nondischargeable**

An individual debtor may not discharge a debt "for willful and malicious injury by

the debtor to another entity . . . ."  11 U.S.C. § 523(a)(6).  "Willful injury" and "malicious

injury" are separate and distinct requirements.  *See Barboza v. New Form, Inc. (In re*

*Barboza)*, 545 F.3d 702, 706 (9th Cir. 2008).  Additionally, if a creditor contends that a

debt resulting from a breach of contract is nondischargeable under section 523(a)(6), the

creditor must prove that the debtor's conduct was tortious.  *Lockerby v. Sierra*, 535 F.3d

1038, 1040-41 (9th Cir. 2008).  Conduct is tortious for purposes of § 523(a)(6) only if it

constitutes a tort under state law.  *Id.* at 1041.  The Court will address these requirements

in turn, beginning with willfulness.

### A.  Willfulness

Within the meaning of § 523(a)(6), willfulness means a "deliberate or intentional

injury, not merely a deliberate or intentional act that leads to injury."  *Kawaauhau v.*

*Geiger*, 523 U.S. 57, 61 (1998).  Twin Falls may establish willfulness by showing "either

that the debtor had a subjective motive to inflict the injury *or* that the debtor believed that

**MEMORANDUM DECISION - 3**

injury was substantially certain to occur as a result of his conduct." *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1208 (9th Cir. 2001). Willfulness may be inferred from all of the facts and circumstances established. *Nahman v. Jacks (In re Jacks)*, 266 B.R. 728, 742 (9th Cir. BAP 2001); *see also Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1146 n.6 (9th Cir. 2002) ("[T]he bankruptcy court may consider circumstantial evidence that tends to establish what the debtor must have actually known when taking the injury-producing action.").

The bankruptcy court did not err in finding that Visser inflicted a willful injury upon Twin Falls Staffing. The most damning evidence supporting this finding is the manner in which Visser left Twin Falls. When he resigned, Twin Falls had three key, top-level employees: (1) Joe Visser; (2) Stan Visser, Joe's father; and (3) Tom Welstad. Joe managed the store. Stan owned 25 percent of the company and served as its chief operating officer. Welstad owned 75 percent of the company and served as its chief executive officer, but he was not involved in day-to-day operations. "He was the money guy", and he trusted Joe and Stan to operate the business in the best interest of all involved. *July 18, 2013 Oral Ruling ("Oral Ruling"),* Bankr. Adv. Dkt.[1] 75, at 12.

Toward the end of October 2009, Joe and Stan resigned, but they did not give Welstad any meaningful advance notice. Instead, they went about establishing their new business and then – just days before the new business was ready to open its doors – they drafted resignation letters. *See Bankruptcy Court Findings ("Findings"),* Bankr. Adv.

---

[1] Throughout this decision, references to "Bankr. Adv. Dkt." are to the bankruptcy court's docket in *Twin Falls Staffing, LLC v. Visser (In re Visser),* Case No. 11-8096-JDP (Bankr. D. Idaho).

MEMORANDUM DECISION - 4

Dkt. 58, ¶¶ 32-46, 50-51.

Joe wrote a resignation letter on Wednesday, October 28, 2009, and put it on his

father's desk. *Id.* ¶ 51. But he knew his father would be leaving the company with him

and would not notify Welstad, until the following Monday, November 2, 2009 – the same

day Joe and Stan would open their new business. Stan played more or less the same

game. He wrote his resignation letter on October 26 but waited until October 30 to put it

in the mail, anticipating that Welstad would not receive it until the following Monday,

November 2. *See id.* ¶ 50; *Oral Ruling,* at 26.

When Monday morning, November 2, 2009, dawned, Joe and Stan's new business

was humming. Among other things, the new company dispatched temporary workers to

Lamb Weston – formerly Twin Falls' largest, best client – for day, swing, and graveyard

shifts. All of those temporary workers were former employees of Twin Falls Staffing.

*See Findings* ¶ 35. Twin Falls Staffing's office, by contrast, was essentially closed. Stan

Visser had been at the Twin Falls' building early that morning, but the doors were

locked, the curtains were drawn, and the phones were being forwarded to a pager. *Id.*

¶ 58.

The Vissers took all these actions despite being bound by non-competition clauses

with Twin Falls Staffing. Additionally, they did not arbitrarily select November 2, 2009

as the day to open their new business. This was the day Twin Falls' contract with Lamb

Weston was set to expire. *Id.* ¶ 47.

On this record, Visser's insistence that the evidence permits just one conclusion –

that he was doing nothing more than attempting to succeed in a new business venture –

**MEMORANDUM DECISION - 5**

lacks any persuasive force.  Likewise, Visser's argument that his father was the only

person who may have inflicted a willful or malicious injury upon Twin Falls Staffing is

not supported by the facts.  Rather, on the evidence before it, the bankruptcy court

correctly found that Joe Visser willfully injured Twin Falls Staffing within the meaning

of § 523(a)(6).

### B.     Malice

Similarly, the bankruptcy court did not err in concluding that Visser inflicted a

"malicious injury" upon Twin Falls Staffing.  "A 'malicious' injury involves '(1) a

wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done

without just cause or excuse.'"  *In re Bammer*, 131 F.3d at 791.  "This four-part

definition does not require a showing of biblical malice, *i.e.*, personal hatred, spite, or ill-

will.  Nor does it require a showing of an intent to injure, but rather it requires only an

intentional act which causes injury." *Id.*

The evidence supports the bankruptcy court's finding that Visser signed a non-

competition agreement and that he was fully cognizant of the import of that agreement.

Similarly, the evidence supports a finding that, despite this knowledge, Visser

intentionally breached the agreement by setting up a competing business in a manner that

"was carefully designed to not only injure but to cripple Twin Falls Staffing's ability to

compete with his new business . . . ." *Oral Ruling,* at 5.

On appeal, Visser asserts that the bankruptcy court erred in finding that he was

bound by a non-competition agreement.  Visser says he never signed any such agreement.

But the bankruptcy court did not believe him. *See id.* at 13.  This credibility

**MEMORANDUM DECISION - 6**

determination is afforded great deference because the bankruptcy court, as the trier of

fact, "had the opportunity to note 'variations in demeanor and tone of voice that bear so

heavily on the listener's understanding of and belief in what is said.'"  *Retz v. Samson (In*

*re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010) (quoting *Anderson v. City of Bessemer*, 470

U.S. 564, 575 (1985)).  Moreover, Welstad testified that he personally saw Visser's

original employment contract – which contained a non-competition clause – in Visser's

personnel file.  *Findings* ¶ 32; *Day 1 Trial Tr.,* Dkt. 3-1, at 100:15-18.  Welstad also

testified that Twin Falls Staffing had a strict, no-exceptions policy regarding non-

competition clauses.  *See Day 1 Trial Tr.*, Dkt. 3-1, at 100:5-14.

As for the document Visser signed in 2008 – a new employment agreement,

without a noncompetition clause – the evidence supports the bankruptcy court's

conclusion that the parties had not actually agreed to modify the terms of Visser's

original employment agreement.  *Oral Ruling,* at 15; *see generally Wash. Fed. Sav. v.*

*Van Engelen*, 289 P.3d 50, 55 (Idaho 2012) ("A modification, like a contract, requires a

meeting of the minds.").

In sum, the bankruptcy court did not err in finding that: (1) Visser was bound by a

non-competition agreement; (2) he intentionally breached that agreement; and (3) his

conduct was tortious.  More broadly, the bankruptcy court did not err in finding that

Visser's conduct was malicious, as the evidence easily supports a finding that Visser

performed an intentional act that caused injury, without just cause or excuse. [2]

---

[2] With this ruling, the Court does not need to resolve Visser's brief arguments that he did not
misappropriate trade secrets or breach fiduciary duties.

**MEMORANDUM DECISION - 7**

## C.     Tortious Conduct

Visser has not challenged the bankruptcy court's conclusion that his conduct was

tortious under state law.  He did not identify any such error when he listed the appellate

issues in his opening brief.  *See Opening Br.*, Dkt. 6, at 1.  Moreover, the bankruptcy

court found that Visser had committed various torts, including intentional interference

with a prospective economic advantage and intentional interference with contract. Visser

does not mention these findings on appeal.

In advancing other arguments, however, Visser does challenge the bankruptcy

court's conclusions that he breached fiduciary duties and misappropriated trade secrets.

But even assuming he is correct on these points, Visser has still failed to launch an

effective challenge to the bankruptcy court's conclusion that his conduct was otherwise

tortious.  The Court thus has no reason to resolve the parties' disagreements related to

misappropriation of trade secrets and breach of fiduciary duty.

## 2.     Damages

The next question is whether the bankruptcy court erred in computing damages.

The bankruptcy court's damages award of $361,901.55 is comprised of the following

amounts:  (1) $230,000 in lost net revenues; (2) $128,151.55 in attorneys' fees Twin Falls

incurred in prosecuting the state-court action; and (3) $3,750 for the cost of a bond

related to the state-court injunction.  *Bankr. Ct. Judgment*, Dkt. 8-6, ¶ 1(a)-(c).

Visser challenges the first two parts of the damages award – lost revenues and

attorneys' fees.  The Court will affirm the award of lost revenues, but will reverse the

attorneys' fee award.

**MEMORANDUM DECISION - 8**

## A.     Attorneys' Fees

The bankruptcy court's decision to award attorneys' fees is reviewed for an abuse

of discretion or an erroneous application of law.  *See In re Baroff*, 105 F.3d 439, 441 (9th

Cir. 1997); *Bertola v. N. Wisconsin Produce Co. (In re Bertola)*, 317 B.R. 95, 99 (9th Cir.

BAP 2004).

The bankruptcy court's decision to award fees as an item of compensatory

damages is contrary to the general rule that attorneys' fees incurred in litigation are not

recoverable as damages because they are not the "legitimate consequences" of the

defendant's wrongful conduct.  1 Robert L. Rossi *Attorneys' Fees* § 8:1 (3d ed. 2013);

*see generally Hellar v. Cenarrusa*, 682 P.2d 524, 531 (Idaho 1984) ("We continue to

adhere to the so-called "American rule" to the effect that attorney fees are to be awarded

only where they are authorized by statute or contract.").

A corollary rule is that attorneys' fees incurred in a prior litigation against the

same defendant are not recoverable as damages in a subsequent lawsuit.  *See* Rossi § 8:1;

*Losser v. Bradstreet*, 183 P.3d 758, 762 (Idaho 2008) (citing 25 C.J.S. *Damages* § 70

(2007) *and* 22 Am. Jur. 2d *Damages* § 435 (2007)).[3]  Although this corollary rule does

not expressly contemplate an adversary proceeding as the "subsequent lawsuit," the logic

---

[3] There is an exception to this general rule, known as the wrong-of-another doctrine. *Cf. Koelker v. Turnbull*, 899 P.2d 972, 976 (Idaho 1995) (in suit for breach of covenant of title, fees incurred in quiet title suit against third parties were properly awarded as damages, but fees incurred in suit to enforce covenant were not recoverable as damages). The Restatement of Torts formulates the doctrine as follows: "One who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action.  Restatement (Second) of Torts § 914(2).  Twin Falls has not even suggested that the wrong-of-another doctrine applies here, which makes sense because there is no third party involved within the meaning of the doctrine.  That is, Twin Falls was not forced to defend against or pursue a third party due to Visser's misconduct.

MEMORANDUM DECISION - 9

still applies.  If a litigant sues in state court, and later files a nondischargeability action in

the bankruptcy court, the fees incurred in the state-court action are not transmuted into

damages.  They are still fees.

Of course, this does not mean Twin Falls lost any ability to recover attorneys' fees

just because Visser filed a bankruptcy petition in the middle of the state-court

proceedings.  If Twin Falls had identified a contractual provision or statute authorizing a

fee award, then the bankruptcy court could have concluded that:  (1) Twin Falls was

entitled to recover its attorney fees; and (2) those fees were nondischargeable.  *See*

*generally Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 449

(2007); *Cohen v. De la Cruz*, 523 U.S. 213, 223 (1998); *In re Bertola*, 317 B.R. at 99-

100.

In this case, however, Twin Falls did not provide the bankruptcy court with any

authority to award attorneys' fees in the first place.  And on appeal, Twin Falls offers up

just one theory – mitigation – to support the fee award.  Twin Falls says that when it sued

Visser in state court, it was mitigating its damages and should be allowed to recover its

attorneys' fees as a mitigation expense.

There are at least two problems with this argument.  First, the case Twin Falls

relies on – *McCormick International USA, Inc. v. Shore,* 277 P.3d 367 (Idaho 2012) –

discusses mitigation only in the most general terms.  It does not hold or suggest that

attorneys' fees may be awarded as damages award under a mitigation theory.

Second, if Twin Falls' mitigation argument is carried to its logical conclusion,

then every plaintiff who is wronged and sues to prevent further damage would be entitled

**MEMORANDUM DECISION - 10**

to recover attorneys' fees in a subsequent suit.  This would effectively eviscerate the

American rule, which requires litigants to pay their own attorneys' fees unless a statute or

contractual provision authorizes a fee award.  *See generally Hellar,* 682 P.2d at 531

(Idaho adheres to the American rule).

This principle is illustrated in *GME, Inc. v. Carter,* 917 P.2d 754, 756-57 (Idaho

1996).  The case is not directly on point because it does not deal with attorneys' fees

incurred in a previous litigation.  But it is still informative because the plaintiff in that

case won a trade secrets claim and then sought to recover part of its attorneys' fees as an

element of damages.  The Idaho Supreme Court refused, explaining that "actual loss" in

the trade-secrets context includes "lost profits, lost customers, lost market share, and

similar losses" – not attorneys' fees.  *See id.* at 757.  The same is true here.  Twin Falls'

losses from Visser's wrongful conduct logically include lost profits, but not attorneys'

fees.

For all these reasons, the bankruptcy court erred when it awarded attorneys' fees

as an item of compensatory damages.

### B.  Lost Net Revenues

Turning to the $230,000 lost-revenues award, a trial court's computation of

damages following a bench trial is reviewed for clear error.  *See Masu, B.V. v. Walt

Disney Co.*, 185 F.3d 932 (9th Cir. 1999).  An appellate court "will not disturb an award

of damages unless it is clearly unsupported by the evidence." *Id.* (citation omitted).

Here, the bankruptcy court clearly explained how it arrived at the $230,000 lost-

revenues award.  The short version is that the court did a before-and-after comparison of

MEMORANDUM DECISION - 11

net revenues and concluded that Twin Falls lost roughly $470,000 during the one-year

period after Visser left the company.

This finding is supported by Tom Welstad's testimony and Trial Exhibit 182,

which contains a profit-and-loss statement for Twin Falls Staffing.  *See Twin Falls LLC*

*Profit & Loss Statement,* Dkt. 8-6, at 834-35 (GSS0004117-18).  Welstad testified that

within Exhibit 182, he had "firm[ed] up" Twin Falls' estimated losses.  *See Day 2 Trial*

*Transcript,* Dkt. 3-2, at 194:21 to 195:7.  Exhibit 182, in turn, shows that Twin Falls

netted around $380,000 during the one-year period before Visser left.  It also shows that

in the year following Visser's departure, Twin Falls lost around $90,000.  Then it's just

basic math:  $380,000 less –$90,000 = $470,000.

After arriving at that $470,000 figure, the bankruptcy court cut it roughly in half,

explaining the reduction as follows:

> While Joe left them in the lurch and for a period of six months they
> were really scrambling and that was Joe's fault if you will, from my
> perspective, even despite him leaving, it could reasonably be expected
> that Mr. Welstad and his folks would come in, get the business back up
> and running, get other people hired, get other relationships re-
> established, get back on their feet, and back in the competition within a
> period of approximately six months.

*Oral Ruling,* at 23:15-23.

The Court finds no reason to disturb this award.  The computation is

straightforward, logical, and easily supported by the evidence.  Visser's main attack on

appeal is that Twin Falls failed to establish damages with "reasonable certainty."  But the

reasonable-certainty standard focuses more on determining the fact of damages, rather

than fixing the amount of damages with mathematical certainty.  As the Idaho Supreme

**MEMORANDUM DECISION - 12**

Court has explained:

> The measure of damages for loss of profits is rarely susceptible of
> accurate proof . . . .  Therefore, the law does not require accurate proof
> with any degree of mathematical certainty . . . .  *Damages need be*
> *proved only with a "reasonable certainty[,] and this means that [the]*
> *existence of damages must be taken out of the realm of speculation.* The
> mere fact that it is difficult to arrive at [an] exact amount of damages,
> where it is shown that damages resulted, does not mean that damages
> may not be awarded; it is for the trier-of-fact to fix the amount.

*Trilogy Network Sys., Inc. v. Johnson*, 172 P.3d 1119, 1121 (Idaho 2007) (emphasis

added; all internal quotation marks and citations omitted); *see also Milgard Tempering,*

*Inc. v. Selas Corp. of Am.*, 902 F.3d 703, 710 (9th Cir. 1990) (requirement that lost profits

be proved with reasonable certainty "'is concerned more with the *fact of damage than*

*with the extent or amount of damage*'") (citation omitted).

In addition to arguing that damages were not established with reasonable certainly,

Visser asserts the following, more specific challenges to the lost-revenues award:

**i. Assumptions Related to Future Revenues.**  First, Visser argues that the

bankruptcy court selected an improper base-line year (or, put differently, the "before

year") for the before-and-after comparison because Twin Falls had had one of its best

years ever.  He suggests that the court should have assumed that sales and profits would

have dropped.  But, based on the evidence at trial, it would be just as easy to infer that

Twin Falls would have made at least the same amount as it had made the year before.

After all, the Twin Falls' sales had mainly been trending upward for years.  At trial,

Visser testified that under his management, sales had been steadily increasing:  "When I

took the role as a manager, my father had done 1.4 million. I took it to 1.9 the next

following year. Then I went to 2.3, then 2.7, 3.2, 3.9 and then 4 million, back to back

years." *Day 3 Trial Transcript,* Dkt. 3-3, at 192:22 to 194:11. On this record, the

bankruptcy court reasonably assumed that revenues would at least hold steady, if not

increase.

       **ii. Losses Not Attributable to Visser's Wrongful Conduct.** Visser next argues

that not *all* of Twin Falls' claimed losses could be attributed to his wrongful conduct. He

says the company would have lost business if he quit, regardless of whether there was

any wrongful conduct associated with his departure. But the bankruptcy court already

took that into account. It explained that some of the Twin Falls losses could not be

attributed to "Joe's wrongful conduct. Some of it is just plain business." *Oral Ruling,* at

24. That is why damages were limited to a six-month period.

       **iii. Miscellaneous Expenses**. Finally, Visser complains about miscellaneous

expenses reported in Trial Exhibit 182, which, as already noted, is the profit-and-loss

statement the bankruptcy court relied on in computing damages. Visser says this

statement wrongly includes various costs or expenses for the year following Visser's

departure – thus inflating the company's claimed losses. Visser's ultimate goal, with this

series of arguments, is to convince the Court to back out these expenses and then re-

calculate a new, lower damages award.

       The first problem with this argument is that Visser stipulated to the admission of

Exhibit 182 at trial, without any reservations or limitations. *See Day 2 Trial Tr.,* Dkt. 3-

2, at 194:22-23. If Visser had issues with the expenses reported within this statement, he

should have raised those issues at trial.

**MEMORANDUM DECISION - 14**

***Travel and Lodging; Fringe Benefits; State Unemployment***

A second problem is that Visser's challenges are often speculative. For example, regarding the listed expenses for (1) travel and lodging, (2) fringe benefits, and (3) "state unemployment," Visser simply dropped the following sentences into his brief:

- Travel and lodging was also extremely high for the period November 2, 2009, to November 2, 2010, versus the previous year for a difference of $14,141.37." *Opening Br.*, Dkt. 6, at 20.

- "In November 2, 2009, to November 2, 2010, fringe benefits were used as an expense when no such [expense] existed the previous year, namely, a reduction of $2,042.41." *Id.*

- "[T]here is no reason why the state unemployment amount would be higher in the period of November 2, 2009, to November 2, 2010, namely, a discrepancy of $1,084.59, if there is less work going on at the Twin Falls location." *Id.*

These unfinished thoughts do not convince the Court that the bankruptcy court erred by relying on a profit-and-loss statement that included the listed expenses.

***Legal and Professional Fees***

Visser's arguments regarding expenses for "legal fees" and "professional fees" are slightly more specific. From what the Court can gather, Visser is arguing that these fees should not be factored into the profit-and-loss statement because they duplicate the attorneys' fees the bankruptcy court separately awarded to Twin Falls.

Preliminarily, there is no evidence that the legal and professional fees reported in the profit-and-loss statement are, in fact, the same fees Twin Falls paid to prosecute the state-court action. (In fact, the legal and professions fees reported in Exhibit 182 do not appear to match up – in terms of dollars spent – with the $128,151.55 in attorneys' fees

Twin Falls incurred in the state-court action. *Compare Trial Ex. 182*, at 1 (reproduced at

Dkt. 8-6, at 832) *with Trial Ex. 182* at GSS0004117-18 (reproduced at Dkt. 8-6, at 834-

35). This likely explains why Visser is forced to say that the reported professional fees

"*appear[]* to be a duplication." *Opening Br.*, Dkt. 6, at 20 (emphasis added).

But even assuming the legal and professional fees reported in the profit-and-loss

statement represent the dollars Twin Falls spent litigation the state-court action, there is

no longer any duplication. The Court has reversed the bankruptcy court's $128,151.55

attorneys' fees award.

A logical follow-up issue is whether attorneys' fees should also be backed out of

the profit-and-loss statement before Twin Falls' lost profits are calculated. But Visser

has not made that argument. Rather, his only argument on appeal is that the attorneys'

fees should not be awarded twice – once as a separate item and then again, by factoring

them into a profit-and-loss statement. Because Visser has never argued that attorneys'

fees should be entirely excluded from the profit-and-loss statement, the Court will not

resolve the issue.

### *Office Equipment*

Visser's final challenge to the reported expenses deals with $26,207.21 that Twin

Falls expensed to "Office Equip Maint/Replace." *See Trial Ex. 182* at GSS0004118.

Visser says these expenses should be backed out of the profit-and-loss statement because

the bankruptcy court "clearly stated it was not going to require anything with respect to

damage to the computer . . . ." *Opening Br.*, Dkt. 6, at 20; *see also Oral Ruling*, at 21-22.

Visser is referring to the fact that Twin Falls accused Visser of sabotaging the

**MEMORANDUM DECISION - 16**

company's computers right before he left the company. *See Oral Ruling,* at 21. The

bankruptcy court found that Twin Falls had failed to prove sabotage and declined to

assess the computer-repair costs to Visser. *Id.* at 22.

But this conclusion does not lead the Court to believe the bankruptcy court's

damages award needs to be adjusted. First, there is no evidence establishing that the

$26,207.21 expensed to the category "Office Equip Maint/Replace" is the same money

Twin Falls spent repairing computers in the immediate wake of Visser's departure.

But even assuming these dollars are the same ones used to repair the computers,

Visser's argument is still defective. Visser is basically arguing that the bankruptcy

court's damages award is inconsistent because the court stated it was not going to assess

the computer repair costs as damages against him, but it then allowed those same costs

come in via the lost profits award.

But there is another way of viewing the damages award that supports the

judgment. As this Court views the record, the bankruptcy court was declining to isolate

the entire computer repair bill and then assess that amount against Visser separately. But

when it determined the lost-profits award, there would be no reason to for the bankruptcy

court to assume – contrary to the evidence – that Twin Falls had not incurred the reported

$26,207.21 expense in maintaining or replacing equipment during the relevant time

period. In fact, Visser himself pointed out that Twin Falls often had problems with its

computers. *Trial Memo.,* Bk. Adv. Dkt. 60, at 20.

For all these reasons, the Court will affirm the bankruptcy court's $230,000

damages award for lost net revenues.

MEMORANDUM DECISION - 17

## 3.     The Motion to Alter or Amend the Judgment

Visser next argues that the bankruptcy court erred when it denied his motion to alter or amend the judgment.  On appeal, Visser's arguments on this point focus mainly on the attorneys' fees awarded to Twin Falls.  Based on the Court's earlier ruling, these arguments are moot.

Otherwise, Twin Falls' arguments related to the motion to amend are extraordinarily general.  For example, Twin Falls attacks the entire damages award with the following few sentences, with no supporting citations to legal authority:

> The revenue was not been explained at all [sic].  For loss of revenue, plaintiff merely provided an exhibit without explanation.  The [Bankruptcy] Court should not have to reach, which it had no alternative to do, to determine additional damages.  The only damages defendant deems to be incurred is for the [$3,750] bond.  Therefore, the Findings of Fact and the Judgment should be amended accordingly.

*Opening Br.,* Dkt. 6, at 23.  For the reasons already explained, the bankruptcy court did not err in computing the compensatory damages awarded as lost net revenues.  Further, the bankruptcy court did not err in denying Visser's motion to alter or amend the judgment.  As the bankruptcy court correctly observed when it ruled on the motion, Visser did not set forth any proper grounds for altering or amending the judgment.  Rather, Visser merely rehashed the evidence and arguments that had been advanced before.  The bankruptcy court thus did not abuse its discretion by denying the motion.

## 4.     Twin Falls' Request for Attorneys' Fees

Finally, the Court will deny Twin Falls' request for an award of attorneys' fees on appeal.  Federal Rule of Bankruptcy Procedure 8020 allows the Court to award "just

**MEMORANDUM DECISION - 18**

damages and single or double costs to the appellee" if it determines that an appeal is

frivolous.  Fed. R. Bankr. P. 8020.  The rule further contemplates a separately filed

motion or notice from the district court.

There is no basis for an award of fees here, given that Visser has partially

succeeded on its appeal.  Further, although Visser's arguments did not, by and large,

carry the day, the Court does not believe they were frivolous.

## CONCLUSION

The Court reverses the portion of the bankruptcy court's judgment that awards

Twin Falls $128,151.55 for "costs and expenses" Twin Falls incurred in the state-court

action.  The judgment is affirmed in all other respects.  The case is remanded to the

bankruptcy court with instructions to enter judgment consistent with this ruling.  The

bankruptcy court's denial of Visser's Motion to Alter or Amend the Judgment is

affirmed.  The parties shall bear their own costs on appeal.

**AFFIRMED IN PART; REVERSED and REMANDED IN PART.**

DATED: April 21, 2014

B. Lynn Winmill
Chief Judge
United States District Court

**MEMORANDUM DECISION - 19**